1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SERGIO MEZA JIMENEZ,

　　　　　Plaintiff,

　　v.

YOUNG'S MARKET COMPANY, LLC, et al.,

　　　　　Defendants.

Case No.  21-cv-02410-EMC

**ORDER DENYING REMAND**

Docket Nos. 33-35

## I.　　**INTRODUCTION**

In this case, Plaintiff Sergio Jimenez ("Plaintiff") filed suit against his employers, Defendants Young's Market Company, LLC and Republic National Distributing Company, LLC ("Defendants") for violations of California's Labor Codes.  Plaintiff seeks civil penalties based on alleged wage and hour violations under the Private Attorneys General Act ("PAGA").  The terms and conditions of Plaintiff's employment were subject to a collective bargaining agreement ("CBA").

Pending before the Court is an Order to Show Cause as to why this case should not be remanded to State Court.  Defendants argue that subsequent events after a valid removal do not divest the court of subject matter jurisdiction and that preemption applies under Section 301 of the Labor Management Relations Act ("LMRA") due to the application of the CBA.  Plaintiff argues that an affirmative defense of preemption does not establish subject matter jurisdiction and that there is no complete field preemption unless all of Plaintiff's claims are preempted by the CBA. Therefore, Plaintiff focuses his argument on his minimum wage claim, which he argues cannot be preempted under California law because minimum wage is a state right that cannot be displaced

1    by a CBA.

2                    II.        **FACTUAL & PROCEDURAL BACKGROUND**

3    A.      Procedural Background

4            Plaintiff brought this class-action lawsuit against Defendants, asserting various causes of

5    actions under the California Labor Code.  Plaintiff argues that Defendants failed to: pay minimum

6    and regular rate wages, pay overtime wages, provide meal periods, authorize and permit rest

7    periods, maintain accurate records of meal periods, timely pay all wages to terminated employees,

8    and maintain accurate wage statements.  Docket No. 19 ("FAC") at 1.  On April 2, 2021,

9    Defendants removed this case under CAFA jurisdiction.  *See* Docket No. 1.  On June 16, 2021,

10   Plaintiff amended his complaint to add a PAGA cause of action.  *See* FAC.  Plaintiff later moved

11   to dismiss his class and individual claims without prejudice due to an arbitration agreement

12   containing a class action waiver.  Docket No. 24 at 2.  All class and individual claims were

13   subsequently dismissed such that the only remaining cause of action is for civil penalties under

14   PAGA.  *See* Docket No. 27.  Thereafter, the court issued an order to show cause as to why this

15   case should not be remanded to State Court.

16   B.      Factual Background

17           Plaintiff alleges as follows in the FAC:

18           Plaintiff was an employee of Defendants and was typically scheduled to work 4 days in a

19   workweek, and typically in excess of 10 hours in a single workday.  FAC at 5.  During this time,

20   Defendants required Plaintiff to perform work "off-the-clock" by working during non-scheduled

21   hours, uncompensated.  FAC at 6.  For example, Defendants required Plaintiff to wait in line in

22   order to go through a security check, including a bag search, after clocking out each workday, and

23   after clocking out for meal breaks.  *Id.*  Further, Defendants did not satisfy the requirements for an

24   alternative workweek schedule at the location in which Plaintiff was employed.  *Id.*  Plaintiff also

25   received non-discretionary bonuses during their employment, but Defendant failed to include all

26   remuneration when determining the regular rate of pay for purposes of paying overtime premiums

27   at the correct rate of pay.  *Id.*

28           Plaintiff further alleges that he worked in excess of five consecutive hours a day without

United States District Court
Northern District of California

the required 30-minute, continuous and uninterrupted, duty-free meal period, and was not informed of his right to take a meal period by the end of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of work.  Defendants did not have adequate policies or practices to document and verify whether their employees were taking their required meal periods.  *Id.*  Defendants also regularly required Plaintiff to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four hours of work.  *Id.*  Plaintiff also worked in high temperatures without air conditioning and proper air ventilation, and Defendants failed to provide training and sufficient water for Plaintiff.  *Id.*

Plaintiff lastly argues that Defendants failed to timely pay Plaintiff and provide itemized wage statements showing all his hours worked, wages earned, overtime hours, and wages for meal and rest periods that were not authorized and permitted to take in accordance with California law. *Id.* at 7.  This led Plaintiff to believe that he was not entitled to be paid his minimum wages, overtime wages, meal period premium wages, rest period premium wages and their correct California rates.  *Id.*  Plaintiff therefore believed that he had been paid his minimum, overtime, meal period premium, and rest period premium wages at the correct California rate even though that was not the case.  *Id.*  The violations also hindered Plaintiff from determining the wages owed to him before and during this action, making Plaintiff have to perform mathematical computations to determine the unpaid wages, computations he would not have to make if the wage statements were accurate.  *Id.* at 7–8.  The wage statements also inaccurately understated the wages, hours, and wage rates; therefore, Plaintiff was paid less than the wages and wage rates to which he was entitled.  *Id.*  Finally, this understatement of the wages caused Plaintiff to lose entitlement and/or accrual of the full amount of Social Security, disability, unemployment, and other governmental benefits.  *Id.*

### III.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted).  Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to

3

United States District Court
Northern District of California

federal district court only if the federal court has subject matter jurisdiction over the case.  *See City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997).  "The propriety of removal . . . depends on whether the case originally could have been filed in federal court."  *Id.*  A case is remanded to state court if at any time before final judgment it appears a removing court lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c); *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991).  The Defendant who seeks removal bears the burden of establishing federal subject matter jurisdiction.  *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988).  This burden is substantial: "Federal jurisdiction must be rejected if there is any doubt as to the right of removal[.]"  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979)).

## IV.    DISCUSSION

A.    Original CAFA Jurisdiction

Defendants argue that because this Court had CAFA jurisdiction over Plaintiff's class claims at the time of removal, the Court may maintain jurisdiction over Plaintiff's later-added PAGA claim.  Docket No. 34 ("D's Brief") at 4–5.  Defendants contend that "once a federal court properly obtains CAFA jurisdiction, subsequent events cannot divest the court of subject matter jurisdiction."  D's Brief at 5 (citing *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010) ("[A] district court's subsequent denial of Rule 23 class certification does not divest the court of jurisdiction [under CAFA].")).  However, this argument was explicitly rejected in other cases.

In *Baumann*, the Ninth Circuit clarified that "CAFA provides no basis for federal jurisdiction" for PAGA claims.  *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1119, 1124 (9th Cir. 2014) ("PAGA is not sufficiently similar to Rule 23 to establish the original jurisdiction of a federal court under CAFA.").  Therefore, courts find that CAFA jurisdiction no longer applies to the remaining PAGA claim upon dismissal of the class action claims.  *Echevarria v. Aerotek, Inc.*, 814 F. App'x 321, 322 (9th Cir. 2020) (citing *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1124 (9th Cir. 2014) (finding that there is no jurisdiction over the PAGA claim upon

4

dismissal of the class action claims because the defendant's notice of removal asserted CAFA as the sole jurisdictional ground); *see also Ramirez*, 2020 WL 6802021 at *4; *Gray v. Marathon Petroleum Logistics Servs.*, LLC, No. CV 20-7865-JFW(JCX), 2021 WL 2808695, at *3, n.2 (C.D. Cal. July 2, 2021) (declining to remand upon the dismissal of class claims only, but distinguishing that "when the class wide claims creating CAFA jurisdiction in federal court have been dismissed and only PAGA claims remain, district courts have generally concluded that federal jurisdiction no longer exists."). Here, the sole basis for removal was under CAFA, and all claims except the PAGA claim were dismissed; therefore, CAFA jurisdiction no longer applies. Docket No. 1 at 2, 4–14; Docket No. 27 ("Order").

Defendants' reliance on *United Steel* is inapposite because in *United Steel*, plaintiff's non-PAGA claims were not entirely dismissed. As the Ninth Circuit explained, "[the defendant's] reliance on *United Steel* . . . is unavailing, as the claims there that gave rise to CAFA jurisdiction survived as individual claims. Here, in contrast, all of the claims giving rise to CAFA jurisdiction have been dismissed in their entirety. CAFA jurisdiction thus has been extinguished." 814 F. App'x at 322; *see also Nevarez v. Costco Wholesale Corp.*, No. 2:19-CV-03454-SVW-SK, 2020 WL 1139810, at *1 (C.D. Cal. Mar. 9, 2020).

Therefore, this Court agrees with other courts in this Circuit that the dismissal of class claims divests the district court of CAFA jurisdiction.

B.   <u>Supplemental Jurisdiction</u>

Next, Defendants ask the Court to retain supplemental jurisdiction over the remaining PAGA claim on the basis of the initial CAFA jurisdiction. D's Brief at 4. Plaintiff asks the Court to exercise its discretion to decline supplemental jurisdiction under 28 U.S.C. § 1367.

Federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may, in its discretion, decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction" under 28 U.S.C. § 1367(c). Under Section 1367(c), a district court may remand for lack of supplemental

jurisdiction where one or more of the following circumstances exists: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).

"[O]nce the district court dismissed every claim over which it had original jurisdiction," the district court is "limited to supplemental jurisdiction over the PAGA claim." *Echevarria*, 814 F. App'x at 322 (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 167 (1997)).  In such cases, "exercise of continuing supplemental jurisdiction over the PAGA claim [is] 'purely discretionary." *Id.* (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

In exercising discretion and deciding whether to decline or to retain supplemental jurisdiction over state law claims, a district court's decision is informed by the "values of economy, convenience, fairness, and comity" articulated by the U.S. Supreme Court in *Gibbs*. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  When "all federal-law claims are eliminated before trial, the balance of factors to be considered . . . —judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Courts generally find these factors against retaining jurisdiction when PAGA is the sole remaining claim after the dismissal of CAFA claims, and this Court finds the same.  *See, e.g., Echevarria*, 814 F. App'x at 322; *Nevarez*, 2020 WL 1139810, at *2 (declining to exercise supplemental jurisdiction over the PAGA claim after dismissal of all other claims over which it has original jurisdiction because the continued adjudication . . . would not serve judicial efficiency, convenience, fairness and comity); *see Ramirez v. C&J Well Serv., Inc.*, No. CV 20-535 PSG (SSX), 2020 WL 6802021, at *4 (C.D. Cal. Nov. 19, 2020); *see also Escobar v. Capstone Logistics, LLC,*, No. 2:20-cv-02501-WBS-JDP, 2021WL 913174 (E.D. Cal. March 9, 2021).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

United States District Court

Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Comity weighs in favor of declining to exercise supplemental jurisdiction "because the state court is competent to hear [PAGA] claims and may have a better understanding of the relevant state law." *Escobar*, 2021 WL 913174, at *4; *Ramirez*, 2020 WL 6802021 at *4 (finding that principles of comity favor remand as PAGA is purely a state law claim).

Judicial economy also favors a remand because the case is "still in its early stages[,]" with the only significant development being the dismissal of the CAFA claims. *Escobar*, 2021 WL 913174, at *4; *Ramirez*, 2020 WL 6802021, at *4 (finding that judicial economy favored remand because the court had not considered the merits of the PAGA cause of action). Finally, factors of convenience and fairness also do not weigh in favor of exercising supplemental jurisdiction because "federal and state fora are equally convenient for the parties" and "[t]here is no reason to doubt that the state court will provide an equally fair adjudication of the issues." *Escobar*, 2021 WL 913174, at *4 (finding that the four factors favored remanding the sole PAGA cause of action to state court).

Accordingly, the Court would not be inclined to exercise supplemental jurisdiction predicated on the initial CAFA removal. There is, however, another basis for federal jurisdiction.

C.   Section 301 Preemption

Defendants propose a new basis for federal question jurisdiction: federal preemption of the state law claims under Section 301 of the LMRA. Plaintiff argues that an affirmative defense is insufficient for subject matter jurisdiction. Plaintiff further argues that Defendants fail to establish complete field pre-emption because Section 301 does not preempt nonnegotiable rights conferred by state law, like the right to minimum wage. P's Brief at 8–10.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Therefore, removal is generally not appropriate when it is grounded only in "[a] defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*,

482 U.S. at 393.

However, the complete preemption doctrine is a "narrow exception to the well-pleaded complaint rule." *Id.* Under this doctrine, even if the complaint has only state law claims, once the state law "has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law" for jurisdictional purposes. *Caterpillar*, 482 U.S. at 393 (quoting *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 22); *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993).

Section 301 of the LMRA holds such complete preemptive force. *Id.* at 394; 29 U.S.C. § 185(a); *see also Franchise Tax Bd. of State of Cal. v. Const. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983). Section 301(a) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

"By enacting the LMRA, Congress completely preempted state law for certain labor-related claims[,]" and "mandated resort to federal rules of law in order to ensure uniform interpretation of [CBAs]." *Id.*; *see also Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962) ("[I]n enacting [Section] 301[,] Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules."); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988). The Supreme Court explained:

> [T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301[.]

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted). The Ninth Circuit clarified in *Curtis*: "In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Curtis*, 913 F.3d at 1152.

At the same time, "the Supreme Court has stressed that '[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.'" *Curtis*, 913 F.3d at 1152 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). "If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). If a contract cannot waive or alter a state law, and if the rights of the state law can be enforced without considering the contract's terms, § 301 does not preempt the claim. *See Miller v. AT & T Network Systems*, 850 F.2d 543, 546 (9th Cir. 1988); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 211 (1985) ("Critically, 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.'"). Therefore, "[s]etting minimum wages, regulating work hours and pay periods . . . and establishing other worker rights remains well within the traditional police power of the states, and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA." *Curtis*, 913 F.3d at 1152 (quotation marks omitted).

A defendant cannot invoke preemption by only alleging a "hypothetical connection between the claim and the terms of the CBA" or "simply because the court may have to consult the CBA to evaluate [a plaintiff's claim]." *Cramer*, 255 F.3d at 691–92 (quoting *Livadas*, 512 U.S. at 125). To ensure § 301 preemption maintains its proper boundaries, courts look to the two-step analysis articulated in *Burnside*. *Curtis*, 913 F.3d at 1152.

First, if the asserted cause of action involves a "right [that] exists solely as a result of the CBA," then the claim is preempted, and the analysis ends there without proceeding to step two. *Id.* (quoting *Kobold*, 832 F.3d at 1032; *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). The essential inquiry is: "Does the claim seek 'purely to vindicate a right or duty created by the CBA itself[?]'" *Id.* (quoting *Schurke*, 898 F.3d at 921).

Second, if the plaintiff's state law right "exists independently of the CBA, [the Court] must still consider whether it is nevertheless 'substantially dependent' on the analysis of the [CBA]." *Burnside*, 491 F.3d at 1059. If so, the claim is preempted. *Curtis*, 913 F.3d at 1153 (quoting

*Kobald*, 832 F.3d at 1033).  This second step "turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA."  *Id.* (quoting *Kobold*, 832 F.3d at 1033).  In this context, "interpretation" is "construed narrowly" and "are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'"  *Id.* (quoting *Schurke*, 898 F.3d at 921).  "Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA."  *Id.*

      1.   <u>The Well-Pleaded Complaint Rule</u>

      Plaintiff first argues that an affirmative defense of Section 301 cannot sustain the removal to federal court.  Docket No. 35 ("P's Brief") at 15 (quoting *Caterpillar*, 482 U.S. at 394) ("The federal question must arise on the face of the plaintiff's properly pleaded complaint to establish federal question jurisdiction.").

      There are some district court cases along Plaintiff's line of argument, finding that subject matter jurisdiction does not exist when the complaint does not mention the CBA at all.  *See, e.g.*, *Gonzalez Quiroz v. Coffman Specialties, Inc.*, No. 20-CV-1779-CAB-AHG, 2020 WL 7258725, at *4 (S.D. Cal. Dec. 10, 2020).  Other district courts follow the Ninth Circuit's approach in *Curtis* that a defense of Section 301 preemption is sufficient to raise a federal question.  *See, e.g.*, *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021).  A district court addressed this split this year: "A few district courts sitting in the Ninth Circuit have refused to apply *Curtis* in light of [the distinction that] . . . *Curtis* was decided on a motion to dismiss, not a motion to remand, meaning that the Ninth Circuit did not address the basis for its subject matter jurisdiction in its opinion."  *Radcliff*, 519 F. Supp. 3d at 750 (citing *Gonzalez Quiroz*, 2020 WL 7258725, at *4 (S.D. Cal. Dec. 10, 2020)).  For example, in *Gonzales Quiroz*, the district court noted that the complaint did not mention the CBA whatsoever and that "the FAC did not 'artfully plead' around alleging a claim for breach of the CBA because the plaintiff was "not arguing that the FAC states a claim for violation of the [CBA] without actually labeling it as a breach of contract claim."  *Gonzalez Quiroz*, 2020 WL 7258725, at *4 (citing *Caterpillar*, 482 U.S. at 397 ("[The plaintiff] does not seek to point out that the contract relied upon by respondents is in fact a collective agreement; rather it attempts to justify removal on the basis of facts not alleged in the

complaint.")).  The *Gonzales Quiroz* court also distinguished *Curtis* based on the fact that the "plaintiff [in *Curtis*] claimed that he was being deprived under the arrangement laid out in the applicable CBA of rights to which he contended [California Labor Code] Section 510 entitles him to receive."  *Id.*

However, other courts "applied *Curtis* to exercise original jurisdiction over . . . claims covered by CBAs . . . absent a similar concession [that a CBA applied,]" finding that "neither Plaintiff's neglect in mentioning the CBA in his complaint, nor his refusal to explicitly concede the CBA applies to him in the first place, is dispositive because Plaintiff does not challenge Defendants' contention that the CBA governs his employment."  *Radcliff*, 519 F. Supp. 3d at 750 ("Plaintiff cannot artfully plead around his CBA in his complaint because, regardless, [p]reemption attaches to a CBA dispute dressed in state law garb.") (internal quotation marks omitted).  "*Curtis* clearly stated that a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court."  *Id.* (citing *Curtis*, 913 F.3d at 1152) (internal quotation marks omitted); *Ayon v. Zero Waste Sols., Inc*, No. 220CV02424MCEJDP, 2021 WL 4065716, at *3 (E.D. Cal. Sept. 7, 2021) (citing *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("Plaintiffs' Complaint makes no mention of the CBA and instead focuses entirely on state claims.  However, lack of reference to the CBA is not dispositive.").  This seems to be a more accurate reading of *Curtis*, and there is a greater number of recent cases that conclude that an affirmative defense of Section 301 alone is sufficient to raise a federal question that can be removed; therefore, the Court should follow this approach.  Finding that a Section 301 defense may be sufficient for subject matter jurisdiction, the Court next addresses whether preemption applies.

> 2.     Complete Preemption

Plaintiff argues that it is "only when Defendants establish that all of Plaintiff's state claims are preempted, the preemptive force of the LMRA is granted under the complete preemption doctrine."  P's Brief at 15.  Plaintiff notes that Defendants failed to show preemption for his minimum wage and off-the-clock claims.  Plaintiff contends that, because Defendants cannot establish preemption for these claims, Defendants cannot establish "complete" field preemption.

United States District Court
Northern District of California

1    P's Brief at 8–10.  Based on this argument, Plaintiff focuses his discussion solely on the minimum

2    wage claim.  However, this argument is unconvincing.  As a recent district court explained:

3    "While plaintiff artfully styles his complaint as containing only one claim for "violation of

4    PAGA," that claim rests upon multiple discreet claims." *Blackwell v. Com. Refrigeration*

5    *Specialists, Inc.*, No. 220CV01968KJMCKD, 2021 WL 2634501, at *4 (E.D. Cal. June 25, 2021)

6    (citing *Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *4 (N.D. Cal. Nov. 8,

7    2019)) ("PAGA claims are derivative of the predicate California Labor Code violations, and

8    therefore rise and fall with those underlying claims.").  Therefore, if there are multiple claims

9    underlying the sole PAGA claim, the district courts consider the preemption issue for each claim

10   separately. *Id.*  If some claims are completely preempted while others do not fall under federal

11   preemption within a sole PAGA claim, courts may find supplemental jurisdiction in the non-

12   preempted claims if they arise out of "a common nucleus of operative fact." *See Blackwell*, 2021

13   WL 2634501, at *5 (citing *Gibbs*, 383 U.S. at 715) (finding supplemental jurisdiction as to the

14   remaining state law claims because they "arise out of the same employment relationship that gave

15   rise to plaintiff's meal period and overtime claims[,]" which were preempted).

16          Thus, while Plaintiff may be correct that the minimum wage claim is not preempted, the

17   Court must consider rest of the underlying claims, keeping in mind that Defendants bear the

18   burden of establishing jurisdiction and "any doubt is resolved in favor of remand." *Plute v.*

19   *Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001) (citing *Boggs v. Lewis*,

20   863 F.2d 662, 663 (9th Cir. 1988)).

21          3.    *Burnside* Analysis

22          Plaintiff argues that the LMRA does not preempt rights mandated by California state law,

23   such as the California Labor Code.  P's Brief at 10 (citing *Curtis*, 913 F.3d at 1152; *Livadas*, 512

24   U.S. at 123).  Defendants argue that preemption is warranted under the *Burnside* test because the

25   rights Plaintiff seeks to enforce in this lawsuit are either: (1) solely conferred by the CBA or (2)

26   substantially dependent on an analysis and interpretation of the CBA for their resolution.  D's

27   Brief at 2.

28

a.     Minimum Wage Claim Under Section 1194

Plaintiff argues that minimum wage is "a nonnegotiable state-law right that cannot be altered by a labor contract" under Cal. Lab. Code § 1197.  P's Brief at 11–12 (citing Cal. Lab. Code § 1197; *Allis-Chalmers Corp.*, 471 U.S. 202 at 212 ("[The LMRA] does not grant parties to a [CBA] the ability to contract for what is illegal under state law.")).  Plaintiff contends that because the right to be paid minimum wage exists independently of any CBA (and notwithstanding anything to the contrary in the CBA), the claim "does not arise solely because of the CBA." *Id.* at 12–13 (citing *Irving v. Okonite Company, Inc.*, 120 F.Supp.3d 1020, 1025 (C.D. Cal. 2015) (finding that plaintiff's rights are "independent of the CBA" because the plaintiff's causes of action are "creations of California statutes").

Section 1197 states:

> The minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful. This section does not change the applicability of local minimum wage laws to any entity.

Cal. Lab. Code § 1197.  Section 1197 is enforced by Section 1194 of the Labor Code, which states:

> (a) **Notwithstanding any agreement** to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is **entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation**, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. Code § 1194.

Plaintiff is correct.  A district court noted that the language of Section 1194 requires that "irrespective of how 'the wages,' or 'hours of work,' are determined under a CBA, plaintiff is entitled to be paid a minimum wage and overtime for all hours he was under the 'control' of defendant." *Andrade v. Rehrig Pac. Co.*, No. 20-CV-1448-FMO(RAOx), 2020 WL 1934954, at *3 (C.D. Cal. Apr. 22, 2020); *see also McGhee v. Tesoro Ref. & Mktg. Co. LLC*, 440 F. Supp. 3d 1062, 1069 (N.D. Cal. 2020).  Therefore, the CBA or its interpretation does not affect Plaintiff's rights under Section 1194. *See Alexander v. Republic Servs., Inc.*, WL 2189770, at *3 (E.D. Cal.

United States District Court
Northern District of California

May 18, 2017) (The "court would merely have to decide whether defendant[] paid plaintiff and putative class members minimum wages for all hours they worked, an inquiry that does not implicate any CBA provisions."); *Burnside*, 491 F.3d at 1073 (finding no preemption because the employee was not "complaining about the wage rate . . . but about the fact that he was not paid at all.").

A district court explained:

> Plaintiff's claim for failure to pay minimum wages for all non-overtime hours—and its related derivative claims—are not preempted by the LMRA. According to Plaintiff, he received less than the full minimum wages he was owed because of Defendant's time-rounding practices and because it paid nothing for the time he spent waiting to clock in and out of work. As a result, Plaintiff contends that Defendant violated California Labor Code § 1194 (and related wage orders) by underpaying him for all eligible non-overtime hours. Yet unlike the other labor codes discussed above, §1194 has no exemption for CBAs. That means Plaintiff's claim for underpayment of all minimum wages owed does not arise solely because of the CBA. And no interpretation of the CBA's terms is needed to resolve the claim. The mere need to look to the [CBA] for damages computation is no reason to hold [a] state law claim defeated by § 301. Rather, the court would merely have to decide whether defendant[ ] paid plaintiff and putative class members minimum wages for all hours they worked, an inquiry that does not implicate any CBA provisions.

*Avila v. Kiewit Corp.*, No. 2:19-CV-1295-SK, 2021 WL 4732575, at *3 (C.D. Cal. June 17, 2021) (internal quotation marks and citations omitted). Plaintiff argues that he received less than the full minimum wages he was owed because Defendants forced Plaintiff to go through security checks after clocking out, failed to provide accurate itemized wage statements detailing correct wages, hours, and wage rates, and understated the wages truly due Plaintiff. FAC at 7–8. This led Plaintiff to believe that he was not entitled to his minimum wage, that he had been paid what he was entitled to, that he was paid the correct California rate, and forced Plaintiff to perform mathematical computations to determine the amounts of wages owed to him. *Id.* Like *Avila*, no interpretation of the CBA's terms is needed to resolve the claim and Plaintiff does not dispute the applicability of the CBA or any of its terms. Although Plaintiff alleges that he was not paid the correct California rate, this statement seems to relate to Plaintiff's overtime hours calculation as Plaintiff never disputes that his minimum wage itself was lower than the California rate. *See id.*

1    Therefore, like "the court would merely have to decide whether [D]efendant[s] paid [P]laintiff . . .

2    minimum wages for all hours they worked, an inquiry that does not implicate any CBA

3    provisions." *Avila*, 2021 WL 4732575, at *3.

4        Further, Defendants fail to address the minimum wage claim, failing to meet its burden to

5    establish federal subject matter jurisdiction under both steps of *Burnside*.  *See Tolentino v. Gillig,*

6    *LLC*, No. 20-CV-07427-MMC, 2021 WL 121193, at *4 (N.D. Cal. Jan. 13, 2021) (finding that a

7    minimum wage claim was not preempted under step two because Defendant failed to identify an

8    active dispute over the meaning of any terms in the CBA).  Therefore, the minimum wage claim is

9    not preempted under 301.

10              b.    Failure to Pay Overtime Under Sections 510, 1194 and 1198

11       Defendants argue that Plaintiff's overtime claim involves rights that exist solely as a result

12   of the CBA.  D's Brief at 6.  Defendants cite *Radcliff* and *Curtis* which found that overtime claims

13   under Labor Code Section 510 were preempted under Section 301 of the LMRA.  D's Brief at 6–

14   7.  Section 510(a) requires an employer to pay the following overtime rates:

15              (a) Eight hours of labor constitutes a day's work.  Any work in
                excess of eight hours in one workday and any work in excess of 40
16              hours in any one workweek and the first eight hours worked on the
                seventh day of work in any one workweek shall be compensated at
17              the rate of no less than one and one-half times the regular rate of pay
                for an employee.  Any work in excess of 12 hours in one day shall
18              be compensated at the rate of no less than twice the regular rate of
                pay for an employee.  In addition, any work in excess of eight hours
19              on any seventh day of a workweek shall be compensated at the rate
                of no less than twice the regular rate of pay of an employee.
20              Nothing in this section requires an employer to combine more than
                one rate of overtime compensation in order to calculate the amount
21              to be paid to an employee for any hour of overtime work.  **The
                requirements of this section do not apply to the payment of**
22              **overtime compensation to an employee working pursuant to** any
                of the following:
23
24                  (1) An alternative workweek schedule adopted pursuant to
                    Section 511.
25                  (2) **An alternative workweek schedule adopted pursuant
                    to a collective bargaining agreement pursuant to Section
                    514.**
26                  (3) An alternative workweek schedule to which this chapter
                    is inapplicable pursuant to Section 554.
27

28   Cal. Lab. Code § 510(a).  Concurrently, Section 514 provides that: "Sections 510 . . . do not apply

United States District Court
Northern District of California

15

to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."  Cal. Lab. Code § 514.

There is some uncertainty as to whether preemption requires the CBA to satisfy both Section 510's condition that it adopt an alternative workweek schedule and Section 514's condition of providing more than 30 percent of the state minimum wage.  *Compare Flournoy v. Watts Healthcare Corp.*, No. 2:20-CV-06607-RGK-SK, 2020 WL 5960686, at *3 (C.D. Cal. Oct. 6, 2020) (finding that a CBA must both satisfy § 514 and adopt an alternative workweek schedule for LMRA preemption), *with Loaiza v. Kinkisharyo Int'l, LLC*, No. LACV1907662JAKKSX, 2020 WL 5913282, at *4 (C.D. Cal. Oct. 6, 2020) (finding that there is no alternative workweek schedule requirement for preemption).  Nonetheless, an alternative workweek schedule exists in this case and preemption applies as long as Section 514 is satisfied.[1]

In *Curtis*, the Ninth Circuit held that an employee's state law claim alleging that the employer did not pay him the required overtime rates was preempted by LMRA Section 301.  The employee argued that his overtime claim was not preempted because Cal. Lab. Code Section 510 "[gave] him a nonnegotiable state right to ... overtime pay ... independent of any interpretation of the CBA."  *Id.* at 1153.  However, the Ninth Circuit disagreed, finding that if a CBA satisfied the requirements of Section 514, a plaintiff's right to unpaid overtime under Section 510 exists "solely as a result of the CBA."  *Id.* at 1153–54.  The Ninth Circuit then concluded that the CBA met the specific requirements for the Section 514 exemption.  *Id.* at 1154.

Like *Curtis*, *Radcliff* found that the overtime claim under Section 510 was preempted because the CBA met the exemption requirements under Section 514:

---

[1] Plaintiff's alternative workweek schedule consisted of "4 days per week and at least 10 hours each workday" and satisfies the definition of an alternative workweek schedule under Cal. Lab. Code § 500.  FAC at 6; Cal. Lab. Code § 500(c) ("'Alternative workweek schedule' means any regularly scheduled workweek requiring an employee to work more than eight hours in a 24-hour period."); *Flournoy v*, 2020 WL 5960686, at *5 (noting that the definition of an alternative workweek schedule is provided by § 500).

United States District Court
Northern District of California

> Defendants have . . . demonstrated that Plaintiff is an employee who is subject to a CBA compliant with section 514 . . . [because t]he CBA expressly provides for Plaintiff's hours of work, wages, and working conditions . . . [and] pays premium wage rates for each hour of overtime worked and has hourly pay rates that are at least 30 percent greater th[an] California's minimum wage rates.

*Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 749 (S.D. Cal. 2021).  Here, Defendants similarly argue that Plaintiff's CBA "expressly provides for the wages, hours of work, and working conditions of employees, including overtime, and final and binding arbitration of disputes concerning application of its overtime provisions" and that the CBA provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for covered employees of not less than 30 percent more than the state minimum wage rate."  D's Brief at 7.

Plaintiff fails to dispute that the overtime claim is preempted at *Burnside* step one and also fails to respond to Defendant's argument that CBA fulfills the requirements of Section 514.  *See* P's Brief; FAC at 6.  Therefore, Plaintiff has effectively conceded that the CBA "meet[s] the requirements of Section 514 and therefore Plaintiff's [Section 510] claim for overtime pay is controlled by the CBAs."  *Curtis*, 913 F.3d at 1155; *see also Tolentino*, 2021 WL 121193, at *3 ("Here, it is undisputed that the relevant CBA meets the requirements set forth in section 514, and, consequently, [the plaintiff's] right to overtime exists solely as a result thereof[] . . . [and] is preempted by the LMRA.").  Plaintiff's reliance on *McGhee* in its arguments is also inapposite because: (1) Plaintiff discusses *Burnside* step two without establishing that the claim is not a right that exists solely out of a CBA under *Burnside* step one; and (2) *Burnside* step two was reached and discussed by the *McGhee* court because "the parties agree[d] that McGhee's claims ar[o]se out of California law, not out of a CBA."  *McGhee*, 440 F. Supp. 3d at 1068.

Plaintiff's overtime claim is also based under Cal. Lab. Code §§ 1194 and 1198 (although they were later dismissed).  *See* FAC.  Section 1194 entitles an employee to recover any unpaid balance of the full amount of his minimum wage or overtime compensation, "notwithstanding any agreements to work for a less wage."  Cal. Lab. Code § 1194.  Section 1198 provides that working for more than the maximum hours of work and the standard conditions of labor fixed by the commission is unlawful.  Cal. Lab. Code § 1198.  However, courts have found that the

applicability of a CBA that fulfills the requirements of § 514 preempted overtime claims based on

§§ 510, 1194 and 1198.  *See Vasquez v. Packaging Corp. of Am.*, No. CV191935PSGPLAX, 2019

WL 4543106, at *4 (C.D. Cal. June 7, 2019) (holding that the plaintiff's overtime claim was

preempted under the LMRA because § 514 applied when the claim was based on §§ 204, 510,

1194 and 1198); *Gray v. Marathon Petroleum Logistics Servs., LLC*, No. CV 20-7865-JFW(JCX),

2021 WL 129144, at *4 (C.D. Cal. Jan. 12, 2021) (noting that plaintiff's overtime claim grounded

in §§ 510, 1194, 1198 and IWC Wage Orders was preempted under *Curtis*); *see also Olea v.

Teichert Pipelines, Inc.*, No. 2:21-CV-01675-RGK-PD, 2021 WL 1839683, at *4 (C.D. Cal. May

7, 2021); *see also Taylor v. NBC W.*, LLC, No. CV197663DMGPLAX, 2020 WL 8268197, at *2

(C.D. Cal. Jan. 2, 2020); *cf. Andrade*, 2020 WL 1934954, at *3 (noting that "[Section] 514 does

not abrogate plaintiff's rights under § 1194.").

Therefore, Plaintiff's overtime claim is preempted by Section 301.

c.   Meal Period Claim Under Section 512 and 226.7

Plaintiff asserts his meal period claim under Section 512 and 226.7.  Section 152(a)

provides that:

> (a) An employer shall not employ an employee for a work period of
> more than five hours per day without providing the employee with a
> meal period of not less than 30 minutes, except that if the total work
> period per day of the employee is no more than six hours, the meal
> period may be waived by mutual consent of both the employer and
> employee.  An employer shall not employ an employee for a work
> period of more than 10 hours per day without providing the
> employee with a second meal period of not less than 30 minutes,
> except that if the total hours worked is no more than 12 hours, the
> second meal period may be waived by mutual consent of the
> employer and the employee only if the first meal period was not
> waived.

Cal. Lab. Code § 512.  It is a violation of Section 226.7 to "require any employee to work during

any meal period mandated under any Wage Order."  FAC at 15 (citing Cal. Lab. Code § 226.7).

Defendants argue that the CBA expressly provides for meal periods, and therefore satisfies

the statutory exemption to meal periods under Cal. Lab. Code Section 512(e).  D's Brief at 8.  As

such, Plaintiff's right to meal periods only exists under the CBA.  *Id.* (citing *Parker v. Cherne

Contracting Corporation*, 2019 WL 359989, at *4 (N.D. Cal. Jan. 29, 2019) (granting a motion to

18

1    dismiss Plaintiff's meal period claims on preemption grounds under Section 301 of the LMRA

2    because the applicable CBA satisfied each of the conditions listed in Section 512(e)); *see also*

3    *Coria v. Recology, Inc.*, 63 F.Supp.3d 1093, 1097 (N.D. Cal. Aug. 7, 2014) ("[I]f Section 512(e)

4    applies, then 512(a) does not apply, and plaintiff's claimed right to meal periods cannot be said to

5    be based on state law.")).

6              Defendants are correct.  Section 512 provides:

7                     (e) Subdivision[] (a) . . . do[es] not apply to an employee specified
                      in subdivision (f) if both of the following conditions are satisfied:
8
                      (1) The employee is covered by a valid collective bargaining
9                     agreement.

10                    (2) The valid collective bargaining agreement expressly provides for
                      the wages, hours of work, and working conditions of employees, and
11                    expressly provides for meal periods for those employees, final and
                      binding arbitration of disputes concerning application of its meal
12                    period provisions, premium wage rates for all overtime hours
                      worked, and a regular hourly rate of pay of not less than 30 percent
13                    more than the state minimum wage rate.

14   Cal. Lab. Code § 512.  Plaintiff once again does not dispute the CBA's application to Section

15   512(e), and the CBA provides different terms as to Plaintiff's paid meal periods and

16   reimbursement.  *See* Docket No. 34-1 ("CBA") at 33–34 ("Meal period shall not be paid unless

17   the employee worked ten and one-quarter (10¼) hours. A one-half hour meal period shall be paid

18   at straight-time.").

19              Therefore, Section 512(e) preempts Plaintiff's Section 512 claim, and plaintiff's meal

20   period claim is preempted by Section 301 of the LMRA.  *See Schwanke v. Minim Prods., Inc.*, No.

21   2:21-CV-00111-SVWJPR, 2021 WL 4924772, at *6 (C.D. Cal. May 24, 2021) (finding that

22   Sections 226.7 and 512(a) are preempted because the CBA meets the conditions of Section

23   514(e)).

24              d.        Rest Period and Unpaid Wages

25              Defendants do not address the rest of Plaintiff's claims under step one.  Therefore,

26   Defendants "implicitly conced[e] that the remaining PAGA theories involve a right conferred

27   upon an employee by virtue of state law, not by the CBA[,]" and only an analysis under step two

28   is required.  *Bradford*, No. 2020 WL 2747767, at *5.

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Moving on to step two, to determine whether a state law right is "substantially dependent" on the terms of a CBA, the court must decide "whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Burnside*, 491 F.3d at 1060 (quoting *Livadas*, 512 U.S. at 125.  The Ninth Circuit has stressed that "in the context of [Section] 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).

Defendants fail to meet their burden because they do not identify any specific interpretation of the CBA required for this claim.  In *Wilson-Davis*, the court explained: "[i]t is not enough for Defendants to provide a laundry list of provisions that they allege the Court must interpret to resolve Plaintiff's claims; Defendants must explain why interpretation, as opposed to mere reference to the CBA, is necessary." *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020); *see also Flournoy v*, 2020 WL 5960686, at *5 ("Based on the facts available to the Court, and without further explanation as to why the Court would be required to interpret these provisions, the Court does not find that interpretation is necessary).  Here, Defendants do not even provide such a list of provisions.  Defendants merely states in a conclusory manner that the claim "cannot be resolved without interpreting the CBA, including its use of industry terms and the practices of the shop incorporated therein."  D's Brief at 10–11.

Therefore, Defendants provides a mere "hypothetical connection" between the claims and the terms of the CBA and fail to identify a dispute as to the interpretation of its terms.  *Coy v. S. Home Care Servs., Inc.*, No. 221CV00067JAMCKD, 2021 WL 1608957, at *4 (E.D. Cal. Apr. 26, 2021) (citing *Cramer*, 255 F.3d at 691) ("Because Defendants have shown only a 'hypothetical connection' between the claims and the terms of the CBA, the Court finds they have not made the requisite showing to trigger preemption under the second part of *Burnside*."); *see also Tolentino v. Gillig, LLC,* No. 20-CV-07427-MMC, 2021 WL 121193, at *5 (N.D. Cal. Jan. 13, 2021) (finding that the Section 226.7 claim was not preempted because "[defendant did] not contend [Plaintiff's] right to rest breaks exists solely as a result of the CBA . . . [and] fail[ed] . . . to identify an active dispute as to the interpretations of the . . . terms[.]").

Because Defendants have "done no more than make a conclusory allegation that the Court

1    will have to interpret whether their right . . . under the CBA violates the relevant [state law]

2    without showing that this is actually in dispute[,]" Defendants' argument for removal jurisdiction

3    fails. *Linebarger v. Graphic Packaging Int'l, LLC*, No. SACV2000309JVSJDEX, 2020 WL

4    1934958, at *6 (C.D. Cal. Apr. 22, 2020).

5            Thus, the rest period and unpaid wages claims are not preempted under Section 301.

6                    e.    <u>Failure to Provide Accurate Wage Statements and Failure to Pay Wages</u>

7                          <u>Under Termination</u>

8            Defendants argue that Plaintiff's claims for failure to pay final wages and provide accurate

9    itemized wage statements are preempted for the same reasons as argued above because they are

10   derivative of his substantive claims for overtime pay and meal and rest periods. *Id.* at 11.

11   Because overtime pay and meal periods claims are preempted, the derivative claims of failure to

12   pay final wages and provide accurate itemized wage statements are also preempted. *Estrada v.*

13   *Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) (finding that when a claim

14   derives from a preempted claim, the derivative claim also fails).

15                   f.    <u>Supplemental Jurisdiction</u>

16           Plaintiffs' remaining claims of minimum wage, rest period, and unpaid wages under

17   California law as discussed above "arise from the same working conditions and relationship with

18   Defendants during the same period as Plaintiffs' overtime[] [and] meal period . . . claims." *Gay v.*

19   *Pac. Steel Grp.*, No. 20-CV-08442-HSG, 2021 WL 2917095, at *3 (N.D. Cal. June 15, 2021).

20   The preemption of one claim is sufficient to establish original jurisdiction over those claims and a

21   basis for supplemental jurisdiction as to all other claims. *See Blackwell*, 2021 WL 2634501, at *5

22   (citing *Gibbs*, 383 U.S. at 715). The claims derive from a "common nucleus of operative fact," the

23   Court chooses to exercise supplemental jurisdiction over the remaining claims. *Id.*; *Gay*, 2021

24   WL 2917095, at *3 (citing *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004) (finding

25   supplemental jurisdiction for minimum wages, unpaid wages, non-compliant wage statements, and

26   other claims when overtime, meal period and rest period claims were preempted).

27   ///

28   ///

United States District Court
Northern District of California

## V.    <u>CONCLUSION</u>

For the foregoing reasons, this Court declines to remand the case to State Court for lack of subject matter jurisdiction.  The Court has either original or supplemental jurisdiction over all claims.

**IT IS SO ORDERED**.

Dated: December 20, 2021

_____
EDWARD M. CHEN
United States District Judge