UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CECILIO BONILLA,

                    Plaintiff,

        v.

YOUNG'S MARKET COMPANY, LLC, et al.,

                    Defendants.

Case No.  24-cv-03489-EMC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS**

Docket No. 19

## I.      **INTRODUCTION**

Plaintiff CECILIO BONILLA ("Plaintiff") has been a commercial truck driver since 2012 and is still currently employed by Defendant Young's Market Company, LLC. At all relevant times, Plaintiff has been a member of Teamster Local Union No. 431 (the "Union"). Defendants are nationwide wine and spirit distributors. Dkt. 19-2, Schmiedeke Decl., ¶ 3. Defendants provide interstate warehousing and transportation services for alcoholic beverage producers. *Id.*

Plaintiff's employment is largely governed by the Collective Bargaining Agreement ("CBA"), Schmiedeke Decl., ¶ 3, Ex. A, between Young's Market Company, LLC, d/b/a Republic National Distributing Company of California (including both Defendants), and the Teamster Local Unions including but not limited to No. 431.

The Complaint contains one cause of action to Violation of Labor Code §§ 2698, et seq. ("PAGA"). Plaintiff seeks PAGA penalties for (1) Failure to Pay All Earned Wages; (2) Violating "Labor Code § 423.6;"[1] (3) Failure to Pay Minimum Wages; (4) Failure to Pay Overtime Wages; (5) Failure to Provide Meal Periods or Pay Premiums in Lieu Thereof; (6) Failure to Provide Rest Periods or Pay Premiums in Lieu Thereof; (7) Failure to Provide Accurate Wage Statements; (8) Failure to Pay Final Wages Timely; (9) Failure to Provide Paid Sick Leave; (10) Failure to Pay

United States District Court
Northern District of California

Reimbursements For Expenses; (11) Failure to Provide Paid Sick Leave [duplicate]; and (12) Failure to Maintain Accurate Records.

## II.    FACTS AND BACKGROUND

On April 2, 2024, Plaintiff filed a complaint in the Superior Court for the State of California, Alameda County. On June 10, 2024, Defendants removed the case. Docket No. 1.

Plaintiff alleges multiple labor code violations and that he was not compensated for all minimum wages because Defendants' timekeeping and/or payroll policies and practices resulted in Plaintiff and other aggrieved employees not being compensated for all hours actually worked. Compl. ¶ 14. Specifically, Plaintiff alleges that on or about December 2023, Defendants transitioned their payroll management system, which led to Plaintiff and other aggrieved employees not being timely provided with wage statements and/or paychecks, and for some pay periods, they were not provided with any wage statements or paychecks at all. Compl. ¶ 12. Thus, Plaintiff alleges that he and others worked off-the-clock without compensation. Compl. ¶ 14.

On October 24, 2024, the Court granted Defendants' admin motion to relate the present case to the case *Jimenez v. Young's Market (*Case No. 3:21-cv-02410-EMC), transferring the present case from Judge Spero to this Court. Docket No. 24. Though the two cases are both PAGA lawsuits against the same employer, the plaintiffs work different jobs (Plaintiff Jimenez was a warehouse worker and Plaintiff Bonilla a driver), and they are thus subject to different factual details, including, *e.g.*, different sections of the CBA, different wages, schedules, and overtime rules.

## III.    LEGAL STANDARD

### A.    12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550

United States District Court
Northern District of California

U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.     LMRA Preemption Under Section 301

Labor Management Relations Act ("LMRA") Section 301 preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

The Ninth Circuit has employed a two-step test, under *Curtis v. Irwin Industries, Inc.*, to ensure that Section 301 preemption extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes. 913 F.3d 1146 (9th Cir. 2019).

Under *Curtis* Step One, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis*, 913 F.3d at 1152. Under *Curtis*, where an asserted Labor Code or Wage Order claim excepts from its reach matters covered by collective bargaining – carving out parties to a qualifying CBA from Labor Code protection–

United States District Court
Northern District of California

1   the inquiry is resolved at this first step in favor of preemption.  *See, e.g., Jones v. Sysco Ventura*

2   *Inc.,* 2021 WL 6104193, *7 (C.D. Cal. Sep. 1, 2021); *Giles v. Canus Corp.*, 2022 WL 3370793,

3   *4–5 (N.D. Cal. Aug. 16, 2022).

4        Under *Curtis* Step Two, if preemption is not found at the first step, courts proceed to the

5   second step of the analysis which asks "whether a plaintiff's state law right is substantially

6   dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153. This step turns on whether the claim

7   can be resolved by simply "looking to" or whether resolution requires "interpreting" the CBA.

8   *Curtis,* 913 F.3d at 1153. If claims are not dependent on interpretation of the CBA, then the claim

9   is not preempted. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059060 (9th Cir. 2007).  If it

10  does, it is preeempted.

12        **IV.**    <u>**DISCUSSION**</u>

13        Defendant argues, and Plaintiffs concede by failing to raise any rebuttal in their

14  Opposition, that the majority of Plaintiff's claims are preempted by the LMRA, and therefore

15  should be dismissed. *See e.g.*, *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir.

16  2006) (where opposition to motion to dismiss failed to address arguments in motion to dismiss,

17  plaintiff "effectively abandoned" the claim). At the hearing on this Motion, Plaintiff conceded that

18  8 of their 11 claims were preempted, except for the following three claims: (3) Failure to Pay

19  Minimum Wages, (7) Failure to Provide Accurate Wage Statements; and (10) Failure to Pay

20  Reimbursements for Cellphone Expenses.

21        The Court agrees that Plaintiff's claims for Labor Code violations for failure to pay

22  overtime wages (Labor Code 510), failure to provide meal periods or pay premiums in lieu thereof

23  (Labor Code 512), failure to provide rest periods or pay premiums in lieu thereof (Labor Code

24  226.7),  failure to pay sick leave (Labor Code 245-246), failure to pay final wages upon

25  termination (Labor Code 201-202), failure to pay wages timely during employment (Labor Code

26  204), and failure to maintain accurate records (Labor Code 1174), are all preempted by Section

27  301 and are therefore, dismissed. Additionally, Plaintiff's claim the non-existent "section 423.6"

28  of the Labor Code is also dismissed for failure to state a claim.

The Court will only analyze Plaintiff's three contested claims.

A.    <u>Failure to Pay Minimum Wages (Labor Code 1194)</u>

Plaintiff brings a failure to pay minimum wage claim under Labor Code Section 1194. Looking to the pleadings, Plaintiff's minimum wage claim appears to be an "off-the-clock" claim asserting that unpaid work was performed before scheduled shifts, after scheduled shifts, and/or during off-the-clock meal breaks, such as regularly working off the clock at the end of their shifts. Compl., ¶ 14. ("Defendants' timekeeping and/or payroll policies and practices resulted in Plaintiff and other aggrieved employees not being compensated for all hours actually worked [. . .] Defendants required Plaintiff and other aggrieved employees to perform work before their scheduled shifts, after their scheduled shifts, and/or during off-the-clock meal breaks, such as regularly working off the clock at the end of their shifts, and failed to compensate employees for this time."). The Court holds this claim is preempted under *Curtis* Step Two—the Court would need to construe the CBA to determine what the timing of shifts are, what the meaning of "work" covered by the CBA is and whether Plaintiff should have been paid for any off-the-clock" work. *See* CBA, Sections 7.1.1 and 7.1.3 (Hours of Work and Rest Periods); Section 7.4.1 (Starting Times: "if an employee is required to report for work earlier than his/her scheduled starting time on any day, without at least third-six (36) hours advance notice, he/she shall be paid at the rate of time and one-half…); Section 7.5.1 ("employees who drive a regularly scheduled route shall not be required to report to work later than 9:00 A.M….").

Moreover, it also appears as though Plaintiff was paid in 8-hour increments. *See* CBA, Section 7.1.1 ("Forty (40) hours shall constitute a week's work for office, drivers, warehousepersons, mechanics, and cross-classification employees to be worked in five (5) days of eight (8) hours continuously except for a lunch period of not to exceed one (1) hour [. . .]). Thus, any additional work, would be considered "overtime." As Plaintiff concedes, Plaintiff is unable to bring an overtime claim because Plaintiff is exempt from the overtime Labor Code Section 510 due to his CBA, and this also requires interpretation of the overtime provisions of the CBA.  Thus, Plaintiff's CBA claim is preempted.  *See Curtis*, 913 F.3d at 1154–55 ("While section 510

5

establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage protections through the collective bargaining process'")

At the hearing, Plaintiff attempted to rely on Complaint ¶ 12 to attempt to state a claim. The Complaint asserts a claim for failure to pay minimum wage, asserting as a basis Labor Code Section 204. *See* Compl. ¶ 12 ("Labor Code § 204 requires that all wages earned by any person….") But this claim is derivative of the failure to pay timely wages claim under Section 204 which is preempted. *Id.* ("[d]uring the relevant time period, Defendants failed to pay Plaintiff and other aggrieved employees all wages due to them within any time period specified by Labor Code section 204…"); *see Chavez v. Smurfit Kappa North America LLC*, 2018 WL 8642837, *4 (C.D. Cal. Oct. 17, 2018) (also involving off-the-clock allegations, holding: "because the unpaid minimum wages claim can only arise out of Defendant's failure to pay overtime wages, the unpaid minimum wages claim is also [preempted by Section 301 and] dismissed with prejudice").

B.    Failure to Provide Accurate Wage Statements (Labor Code 226)

Plaintiff brings a failure to prove accurate wage statements claim under Labor Code Section 226, alleging that Defendants failed "to provide any wage statements for certain pay periods, the failure to timely provide wage statements, the failure to include the total hours worked, including time spent working off-the-clock and during meal and rest periods, failure to state the correct gross and net wages earned for all time worked, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Complaint ¶ 18. This claim is whole or in part, derivative of Plaintiff's Labor Code claims that Plaintiff concedes are preempted under Section 301 for either: (1) being subject to a CBA exemption to the labor code under *Curtis* Step One; or (2) for requiring the Court to interpret the CBA under *Curtis* Step Two. Thus, Plaintiff's wage statement claim is dismissed as preempted under *Curtis*. *See Giles v. Canus Corp.*, 2022 WL 3370793 at *6-7 (N.D. Cal. Aug. 16, 2022) (finding plaintiff's wage statement claim derivative of his minimum wage, overtime, and meal period preempted claims and therefore were likewise preempted by the LMRA).

C.    PAGA Penalties Unpaid Reimbursement (Labor Code 2802)

Plaintiff brings a claim for failure to reimburse under Labor Code Section 2802, which requires employers to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Defendant argues Plaintiff's claim for failure to reimburse cell phone cost is similarly preempted because the CBA mentions reimbursement.

However, as Plaintiff's point out, Section 9.1.1 of the CBA governs Lodging and Meal Reimbursement for traveling employees, which is not the subject of Plaintiff's cell phone reimbursement claim. *Compare* CBA § 9.1.1 *with* Compl. ¶¶ 20, 23.j. Plaintiff alleges Defendants violated Section 2802 by "requir[ing] Plaintiff and other aggrieved employees to use their personal cellphones in the performance of their duties" and "fail[ing] to reimburse Plaintiff and other aggrieved employees for the cost of these expenses." Compl. ¶¶ 20, 23.j. The CBA here does not contemplate reimbursement for cell phone use, or for tools used on the job. *Cf. Linebarger,* 2020 WL 1934958, *6 (Section 301 preemption applied to cell phone expense reimbursement claim where CBA included language regarding the purchase of tools necessary to complete the work). The CBA is unambiguous and does not require interpretation.  The right at issue is based exclusively on state law. Plaintiff's claim for cell phone reimbursement therefore is not preempted by the LMRA. *See Lopez* 2024 WL 171391, at *5-6 (denying motion to dismiss for unreimbursed cell phone expenses claim because CBA only covered reimbursement for employees staying out of town).

Defendant argues any remaining claims must be compelled to arbitration under the FAA.

D.    Arbitration

The Parties do not dispute that Plaintiff entered into an individual arbitration agreement with Defendant.[1] Plaintiff merely disputes whether his claims that are not preempted under the LMRA can be subject to arbitration under the Federal Arbitration Act ("FAA") because Plaintiff

---

[1] The Arbitration Agreement states that "[t]he Parties agree that this Agreement shall be governed by and construed and enforced pursuant to the Federal Arbitration Act, 9 U.S.C. § 1." Schmiedeke Decl., ¶ 5, Ex. B.

United States District Court
Northern District of California

1    argues he is a transportation worker.  Defendants raise no rebuttal to Plaintiff's claim that the FAA

2    does not apply to Plaintiff.

3         The FAA does not apply to "contracts of employment of seamen, railroad employees, or

4    any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This

5    exception applies only to employment contracts with transportation workers. *Southwest Airlines*

6    *Co. v. Saxon* 596 U.S. 450, 458 (2022). Plaintiffs cite ample support that courts have held that

7    delivery drivers who may not themselves have crossed state lines performing their duties can still

8    be "last-mile" delivery drivers of goods in interstate commerce who qualify for the exemption.

9    *Carmona v. Domino's Pizza, LLC* 73 F.4th 1135 (9th Cir. 2023), *cert.denied* (truck drivers

10   delivering ingredients from California supply center to Domino's franchisees within the state were

11   exempt transportation workers); *Rittmann v. Amazon.com, Inc.* 971 F3d 904, 907, 916-19 (9th Cir.

12   2020) (last-mile delivery drivers engaged in intrastate deliveries were exempt transportation

13   workers); *Betancourt v. Transportation Brokerage Specialists, Inc.*, 62 Cal. App. 5th 552, 561

14   (2021) (same); *Nieto v. Fresno Beverage Co., Inc.* 33 Cal.App.5th 274, 284 (2019) (beverage

15   delivery drivers who only made intrastate deliveries still fell within the exemption).)

16        Plaintiff is a transportation worker as he plays an integral role in the flow of beverages

17   across state borders as a "last-mile" beverage delivery driver, and thus he is exempt from the FAA

18   and cannot be compelled to arbitrate thereunder.[2]  The Court then turns to the California law to

19   determine whether he can be compelled to arbitrate under state law.  That issue turns on California

20   Labor Code Section 229.

21

22        1.    Labor Code 229 application

23        California has a general policy favoring enforcement of arbitration agreements, *see Coast*

24   *Plaza Drs. Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 686 (2000), *as modified* (Sept.

25

26

27   ───────────────
     [2] Notably, at the hearing, the Parties argued Plaintiff is representing all non-exempt workers, and
     not just the workers that have a similar position as Plaintiff. Plaintiff's claims would not be subject
28   to the FAA, as he is a "last-mile" driver; however, for the workers who are not transportation
     workers, the FAA would apply.

7, 2000),[3] but there is also a policy *against* allowing arbitration agreements for "due and unpaid wages," found in Labor Code Section 229. Under Section 229, an action to enforce statutes to collect "due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Cal. Lab. Code § 229.

However, this Section only applies to bar the arbitration of claims of unpaid *wages*. This Section does not prohibit the arbitration of claims for *non-wages* and penalties, such as for inaccurate wage statements under Labor Code 226 or expense reimbursements under Labor Code 2802. *See Muller v. Roy Miller Freight Lines, LLC*, No. 30201600874087CUOECX, 2017 WL 11449092, at *3 (Cal. Super. May 24, 2017) ("However, claims for failure to provide mandated meal or rest breaks, or for waiting time penalties, or for failure to provide itemized wage statements, to the extent not duplicative of a separate cause of action for unpaid wages, are not actions for the "collection of due and unpaid wages," and thus are not within the scope of § 229 's protections.") Thus, Plaintiff's arbitration clause may be enforced as to the remaining claim for *non-wage – based* PAGA penalties and cellphone reimbursement. Plaintiffs remaining individual claims are subject to arbitration under California law.

### 2. Arbitration of Individual vs. Representative PAGA Claim

While the Plaintiff's individual claim for expense reimbursement is subject to arbitration under California law, *see Coast Plaza Drs. Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 686 (2000), *as modified* (Sept. 7, 2000) (discussing California policy favoring arbitration), the representative PAGA is not subject to arbitration. The wholesale waiver to arbitrate representative PAGA claims at issue here [4] is against California policy. *Iskanian v. CLS*

---

[3] Referencing *Christensen v. Dewor Developments* 33 Cal.3d 778, 782 (1983) ("California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.")

[4] The "wholesale waiver" of PAGA, as argued by Plaintiff is as follows: "Except as otherwise required under applicable law, the Parties agree that (1) class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Agreement; (2) neither Employee nor the Company will assert any class action or representative action claims; and (3) the Parties shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person." Schmiedeke Decl., Exhibit B at 3.

United States District Court
Northern District of California

1    *Transportation Los Angeles, LLC* 59, Cal.4th 348, 383 (2014).

2        Nonetheless, an individual claim subject to arbitration may be severed from the

3    representative PAGA claim where a severability clause applies.  *Viking River Cruises, Inc. v.*

4    *Moriana*, 596 U.S. 639, 662 (2022) (where a "severability clause in the agreement provides that if

5    the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must

6    still be 'enforced in arbitration.'").  Here, Plaintiff signed an individual arbitration clause with

7    Defendants that included a severability clause stating:

8            The Parties agree that if any term or provision of this Agreement or
             portion thereof shall, for any reason, be held to be invalid or
9            unenforceable or contrary to public policy or any law, then the
             remainder of this Agreement shall not be affected by such invalidity
10           or unenforceability but shall remain in full force and effect as if the
             invalid or unenforceable term, provision or portion thereof had not
11           existed within this Agreement.

12   Schmiedeke Decl., Exhibit B at 4 (Mutual Agreement to Arbitrate Claims). As in *Viking*

13   *River*, the wholesale waiver can be severed to allow for arbitration of Plaintiff's individual PAGA

14   claim.  And the representative PAGA claim can proceed regardless of the arbitration of the

15   individual bringing the PAGA claim.  As the California Supreme Court has clarified, *Viking River*

16   in *Adolph v. Uber Techs., Inc*., "[w]here a plaintiff has brought a PAGA action comprising

17   individual and non-individual claims, an order compelling arbitration of the individual claims does

18   not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other

19   employees under PAGA." 14 Cal. 5th 1104, 1114 (2023). Accordingly, Plaintiff still has standing

20   to bring the representative claim.

21       Nonetheless, courts have discretion to stay nonarbitrable claims while the arbitrable claim

22   proceeds. *See Adolph* 14 Cal. 5th 1104, 1125 ("[w]hen an action includes arbitrable and

23   nonarbitrable components, the resulting bifurcated proceedings are not severed from one another;

24   rather, the court may 'stay the trial of the action until such arbitration has been had in accordance

25   with the terms of the agreement.'" (citing 9 U.S.C. § 3; Code Civ. Proc., § 1281.4)).  "A stay is

26   appropriate where '[i]n the absence of a stay, the continuation of the proceedings in the trial court

27   disrupts the arbitration proceedings and can render them ineffective." *Federal Ins. Co. v. Superior*

28   *Court*, 60 Cal.App.4th 1370, 1375 (1998). Here, the arbitration proceedings of Plaintiff's

1  individual claim could have effect on Plaintiff's representative claim.  As contemplated in *Adolph*,

2  if the arbitrator determines that the plaintiff is an aggrieved employee in the process of

3  adjudicating his individual PAGA claim, "that determination, if confirmed and reduced to a final

4  judgment ... would be binding on the court, and [the plaintiff] would continue to have standing to

5  litigate his nonindividual claims." *Adolph*, 14 Cal. 5th at 1123–24. Conversely, "[i]f the arbitrator

6  determines that the plaintiff is not an aggrieved employee and the court confirms that

7  determination and reduces it to a final judgment, the court would give effect to that finding, and

8  [the plaintiff] could no longer prosecute his non-individual claims due to lack of standing." *Id*. at

9  1124.

10       Accordingly, the Court **STAYS** the remaining representative PAGA claim pending

11  resolution of Plaintiff's individual claim in arbitration. *See Bracamontes v. United Rentals, Inc.*,

12  No. 223CV02697DADCSK, 2024 WL 1884052, at *6 (E.D. Cal. Apr. 30, 2024) (staying

13  "plaintiff's representative PAGA claims in keeping with the decision and instruction of the

14  California Supreme Court in *Adolph*").

15

16  E.    Defendants' Request to Stay any surviving claims.

17       Defendants also seek a stay of the case as to any surviving claims, until the related case

18  *Jimenez v. Young's Market* is resolved under the Court's authority and the "first-to-file" rule. *See*

19  *Alltrade, Inc. v. Uniweld Prods*., 946 F.2d 622, 623 (9th Cir. 1991) (stating first-to-file rule gives

20  federal district courts discretion "to . . . stay . . . an action when a similar complaint has already

21  been filed in another federal court"). The Court **DENIES** this request. Though the two cases were

22  deemed related, there is no convincing reason to apply the first-to-file rule here.  The

23  representative employees in the two actions are different (Plaintiff Jimenez was a warehouse

24  worker and Plaintiff Bonilla a driver), and they are thus subject to different sections of the CBA,

25  including, *e.g*., different wages, schedule, and overtime rules. Additionally, the only remaining

26  claim of the cellphone reimbursement is not a live issue in *Jimenez*. Thus, there is no risk of

27  inconsistent rulings, and no risk of wasting of judicial resources. There is no basis to apply the

28  first-to-file rule and thus the Court denies the request to stay this case pending *Jimenez*.

United States District Court
Northern District of California

11

## V. <u>CONCLUSION</u>

The Court **GRANTS IN PART** Defendants' Motion to Dismiss as to all claims, except for the claim for PAGA Penalties of unpaid cellphone usage reimbursement under Labor Code Section 2802. The Court **COMPELS** Plaintiff's remaining individual claim to arbitration and **STAYS** Plaintiff's remaining representative pending the resolution of Plaintiff's arbitration.

**IT IS SO ORDERED**.

Dated: February 11, 2025

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California