UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>SERGIO MEZA JIMENEZ,<br><br>   Plaintiff,<br><br>  v.<br><br>YOUNG'S MARKET COMPANY, LLC, et al.,<br><br>   Defendants.</td><td>Case No.  21-cv-02410-EMC<br><br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Docket No. 85</td></tr>
</table>

Plaintiff Steve Miller is the substituted named plaintiff.  He has filed a PAGA claim against Defendants Young's Market Company, LLC and Republic National Distributing Company, LLC based on failure to compensate for all hours worked.  Currently pending before the Court is Defendants' motion for judgment on the pleadings.  The issue raised in the motion is failure to exhaust administrative remedies – *i.e.*, the sufficiency of the PAGA notice.  Having considered the parties' papers as well as the oral argument of counsel, the Court hereby **GRANTS** Defendants' motion.

## I.  FACTUAL & PROCEDURAL BACKGROUND

The instant case – a wage-and-hour class action – was filed in state court in February 2021.  At that time, the named plaintiff and putative class representative was Sergio Meza Jimenez.  *See* Docket No. 1 (Owen Decl., Ex. A) (original complaint).  According to Mr. Jimenez, he worked for Defendants "as a **warehouse associate** from approximately November 2019 to April 2020."  Compl. ¶ 7 (emphasis added).

In April 2021, Defendants removed the case to federal court.

In June 2021, Mr. Jimenez filed an amended complaint, adding a PAGA claim.  Per the

first amended complaint ("FAC"), he had given his PAGA notice to the LWDA and to Defendants on February 26, 2021 (the same day he had filed his original complaint). *See* FAC ¶ 96. A copy of the PAGA notice can be found at Exhibit A to Defendants' request for judicial notice ("RJN"). In the PAGA notice, Mr. Jimenez asserted:

> Throughout the statutory period, Defendants maintained a policy and practice of requiring Plaintiff and the Aggrieved Employees to perform work "off-the-clock" by working during nonscheduled hours, uncompensated. For example, Defendants required Plaintiff and the Aggrieved Employees to wait in line in order to go through a **security check** after clocking out each workday, and after clocking out for meal breaks. This included a bag search.

RJN, Ex. A (PAGA Not. at 2) (emphasis added).

In August 2021, the Court granted Mr. Jimenez's motion to dismiss his class and individual claims due to an arbitration agreement. This left only the PAGA claim for resolution. *See* Docket No. 27 (order).

In September 2023, the parties agreed that arbitration had been abandoned and proceeded with litigation of the PAGA and individual claims. *See* Docket No. 50 (minutes).

In June 2024, counsel for Mr. Jimenez indicated that they been unable to communicate with Mr. Jimenez and thus would be moving to substitute the named plaintiff with a new PAGA representative, Steve Miller. *See* Docket No. 58 (status report); Docket No. 59 (minutes). Mr. Miller had provided an amended PAGA notice to the LWDA and Defendants on March 19, 2024. *See* Docket No. 58 (status report). A copy of Mr. Miller's PAGA notice can be found at Exhibit B to Defendants' RJN. Mr. Miller's PAGA notice included the same allegation as Mr. Jimenez's:

> Throughout the statutory period, Defendants maintained a policy and practice of requiring Plaintiff and the Aggrieved Employees to perform work "off-the-clock" by working during nonscheduled hours, uncompensated. For example, Defendants required Plaintiff and the Aggrieved Employees to wait in line in order to go through a **security check** after clocking out each workday, and after clocking out for meal breaks. This included a bag search.

RJN, Ex. B (PAGA Not. at 2) (emphasis added).

In March 2025, the Court allowed the substitution of Mr. Miller for Mr. Jimenez. *See* Docket No. 72 (order).

/ / /

United States District Court
Northern District of California

2

United States District Court
Northern District of California

Subsequently, in May 2025, the Court allowed Mr. Miller to file a third amended complaint ("TAC"). *See* Docket No. 81 (TAC). Several weeks later, Defendants filed their answer. *See* Docket No. 82 (answer).

In the operative TAC, Mr. Miller asserts only a PAGA claim based on the following allegations.

- Mr. Miller worked as a **driver** for Defendants from approximately November 1998 to July 2023. *See* TAC ¶¶ 14. (As indicated above, Mr. Jimenez worked as a warehouse associate, not a driver.) Mr. Miller typically worked 4 days in a workweek and in excess of 10 hours in a single workday. *See* TAC ¶ 14. Defendants classified Mr. Miller "as non-exempt from California's overtime requirements." TAC ¶ 14.

- Defendants did not compensate Mr. Miller for all hours worked. *See* TAC ¶ 4. "For example, Defendants required Plaintiff and the Aggrieved Employees to complete **pre-trip and post-trip inspection duties** off-the-clock. Moreover, Plaintiff and the Aggrieved Employees were also required to complete **pre-trip and post-trip paperwork and reports** off-the-clock."[1] TAC ¶ 16 (emphasis added).

As indicated above, Mr. Miller's PAGA notice, dated March 19, 2024, did mention failure to compensate for all hours worked but based on a different factual predicate. As stated in the PAGA notice: "For example, Defendants required Plaintiff and the Aggrieved Employees to wait in line in order to go through a **security check** after clocking out each workday, and after clocking out for meal breaks. This included a bag search." Defs.' RJN, Ex. B (Mr. Miller's PAGA Notice at 2) (emphasis added). In fact, Mr. Miller's PAGA notice adopted the same factual predicate as Mr. Jimenez's PAGA notice. *See* Defs.' RJN, Ex. A (Mr. Jimenez's PAGA Notice at 2) ("For example, Defendants required Plaintiff and the Aggrieved Employees to wait in line in order to go

---

[1] At the hearing, Mr. Miller provided additional information about the inspections and paperwork. Inspections were of the trucks that the drivers drove – *e.g.*, checking the parts of the vehicle to ensure there were no safety concerns. Paperwork involved, *e.g.*, distribution of routes and determination of schedules.

through a security check after clocking out each workday, and after clocking out for meal breaks. This included a bag search."). This was in spite of the fact that Mr. Jimenez had a different job from Mr. Miller: Mr. Jimenez worked as a *warehouse associate*, and Mr. Miller as a *driver*.

## II.    DISCUSSION

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Although *Iqbal* establishes the standard for deciding a Rule 12(b)(6) motion, we have said that Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule."). Judgment on the pleadings is warranted where, after all factual allegations in the pleadings are taken as true and construed in the light most favorable to the plaintiff, "'there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Interpipe Contr., Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018); *see also Gregg v. Dep't of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017) ("A judgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'").

### B.    Scope of PAGA Notice

The pending motion raises the issue of what is the proper scope of this lawsuit given what Mr. Miller asserted in his PAGA notice, a necessary predicate to the lawsuit.

> PAGA authorizes aggrieved employees to act as private attorneys general and collect "civil penalt[ies]" for Labor Code violations where the [Labor and Workface Development Agency] has been notified and does not itself take action. (§ 2699, subd. (a).) Before bringing a PAGA claim, an aggrieved employee must **first exhaust administrative procedure**s set out in former section 2699.3, which includes providing **notice** to the employer and the LWDA "of the specific provisions of [the Labor Code] alleged to have been violated, **including the facts and theories** to support the alleged violation." (Former § 2699.3, subd. (a)(1)(A).) "The notice requirement allows the relevant state agency 'to decide whether to allocate scarce resources to an investigation.'"

United States District Court
Northern District of California

*Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334, 348 (2021) (emphasis added); *see also Williams v. Superior Ct.*, 3 Cal. 5th 531, 545-46 (2017) (noting that a PAGA notice gives the LWDA "the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations"; in addition, "[n]otice to the employer serves the purpose of allowing the employer to submit a response to the agency, again thereby promoting an informed agency decision as to whether to allocate resources toward an investigation").

According to Defendants, the allegations in Mr. Miller's TAC do not match the allegations in his PAGA notice and therefore he failed to exhaust his administrative remedies. Defendants also argue that Mr. Miller cannot amend his PAGA notice now, *see* Mot. at 13 (asserting that allowing amendment *after* the lawsuit has been filed would defeat the purpose of the PAGA notice), but, even if he theoretically could, the one-year statute of limitations has passed.[2] *See Hutcheson v. Superior Court*, 74 Cal. App. 5th 932, 939 (2022) (stating that "a PAGA action is subject to a one-year statute of limitations"); *Brown v. Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 839 (2018) (stating that, "[b]ecause plaintiff's employment terminated in December 2009, to timely pursue PAGA claims for alleged violations occurring during her employment or upon her discharge, plaintiff had until December 2010 to file her PAGA notice"); *see also* Cal. Code Civ. Proc. § 340(a) (providing for a one-year limitations period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation").

Case law is clear that a PAGA notice is not sufficient if it simply provides legal conclusions – *e.g.*, that the employer "failed to pay wages for all time worked." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1057 (9th Cir. 2015). In *Alcantar*, the Ninth Circuit explained that

> a string of legal conclusions with no factual allegations or theories
> of liability to support them . . . is insufficient to allow the Labor and
> Workforce Development Agency to intelligently assess the
> seriousness of the alleged violations. Neither does it provide
> sufficient information to permit the employer to determine what
> policies or practices are being complained of so as to know whether

---

[2] Per the TAC, Mr. Miller stopped working for Defendants in 2023.

5

to fold or fight.

*Id.*

On the other hand, a PAGA notice is not required to include every potential fact or theory. *See Rojas-Cifuentes v. Superior Court*, 58 Cal. App. 5th 1051, 1059 (2020) (noting that, although plaintiff's "'facts and theories' . . . did not exhaustively explain why [defendant's] wage statements were inadequate," they sufficiently notified defendant and the LWDA "of the general basis for this claim"). As one district court has noted, it would be "absurd" and would "undermine the principles of PAGA" to bind a plaintiff to the facts and theories "exactly as laid out" in the PAGA notice. *Mays v. Wal-Mart Stores, Inc.*, 354 F.Supp.3d 1136, 1148 (C.D. Cal. 2019) (internal quotation marks omitted). This is especially true since "PAGA notices necessarily precede the commencement of litigation and discovery." *Bowen*, 2020 WL 1931278, at \*5; *cf. Ibarra v. Chuy & Sons Labor, Inc.*, 102 Cal. App. 5th 874, 885 (2024) (stating that "'we see nothing in section 2699.3 suggesting that factual allegations in PAGA notices must exceed those normally found sufficient in complaints'").

In the instant case, Mr. Miller does not dispute that his PAGA notice mentioned security checks, such as bag checks of employees when they clock out, while his TAC focuses on pre- and post-trip inspections and reports for drivers and their vehicles. As indicated above, this likely resulted from the fact that Mr. Miller's PAGA notice copied Mr. Jimenez's PAGA notice, despite the fact that Mr. Jimenez was a *warehouse* associate (subject to security checks) while Mr. Miller was a *driver* (subject to pre- and post-trip inspections and reports). But, according to Mr. Miller, it is wrong to focus on this difference because the PAGA notice states that the security checks were just one example where Defendants failed to compensate for all hours worked. Below is the relevant text from Mr. Miller's PAGA notice.

> Throughout the statutory period, Defendants maintained a policy and practice of requiring Plaintiff and the Aggrieved Employees to perform "off-the-clock" by working during nonscheduled hours, uncompensated. For example, Defendants required Plaintiff and the Aggrieved Employees to wait in line in order to go through a security check after clocking out each workday, and after clocking out for meal breaks. This included a bag search. . . .

Defs.' RJN, Ex. B (Mr. Miller's PAGA Notice at 2).

6

United States District Court
Northern District of California

The Court rejects Mr. Miller's position. The first sentence quoted above is simply a legal conclusion and thus is not enough to give the LWDA or Defendants sufficient notice. *See Alcantar*, 800 F.3d at 1057. Essential to the sufficiency of the notice is the *additional* description of the alleged violations – as contained in the second sentence. That second sentence refers only to the example of the security check. It does not refer to anything which pertains to vehicle inspections and reports. In fact, there is no connection between an employee being subject to a security check and a driver being expected to conduct pre- and post-trip inspections and reports. *Cf. Wyatt v. City of Burlingame*, No. 16-cv-02681-DMR, 2017 U.S. Dist. LEXIS 20175, at *24, 29 (N.D. Cal. Feb. 13, 2017) (Title VII claim dismissed for failure to exhaust administrative remedies "where the factual allegations in the EEOC charge bear no reasonable relationship to the claims in [the] plaintiff's complaint" and "would not have reasonably led to an investigation of those claims"; holding that plaintiff failed to exhaust claims for wrongful termination on the basis of national origin even though EEOC charge described national origin-based harassment – "[w]hen a plaintiff's charge is 'very specific,' courts have been reluctant to construe a charge as including additional claims"). There would be no reason why the LWDA or Defendants would investigate the practice of company vehicle inspections of drivers when the complaint focused on bags checks of more general employees.

Indeed, in a recent decision, this Court held that the plaintiff's PAGA notice, which focused on employer-mandated travel time, was not sufficient to wrap in different conduct such as donning and doffing personal protective equipment. *See Diaz v. Chevron, Inc.*, No. C-25-3327 EMC (N.D. Cal.) (Docket No. 34) (Order at 12).

The case that Defendants cite, *Uribe v. Crown Building Maintenance*, 70 Cal. App. 5th 986 (2021), also has a similar holding. In *Uribe*, the plaintiff's

> PAGA notice stated the alleged Labor Code violations were "based on the theory that Employee was entitled to reimbursement of expenses incurred for maintaining his uniform and purchasing his own slip resistant shoe[s] that he had no other use or need for other than to perform his job." Uribe described the factual basis of the section 2802 reimbursement claim as follows: "failing to reimburse Employee for Expenses incurred for purchasing slip resistant shoes and maintaining his uniform."

*Id.* at 992. The plaintiff's complaint repeated allegations that the defendant failed to reimburse for the cost of uniform cleaning and required footwear. Subsequently, the parties reached a settlement which "was conditioned on Uribe filing an amended complaint converting his lawsuit into a class action on his Labor Code claims and including unreimbursed employee cell phone usage costs as an additional basis for both his Labor Code and PAGA causes of action." *Id.* at 989. An objector opposed the settlement, arguing that it was improper for the settlement to wrap in cell phone expenses for the PAGA claim given that the PAGA notice had focused on uniform cleaning and required footwear only. *See id.* at 1002-03.

The state appellate court agreed, noting that the plaintiff had omitted cell phone expenses from his PAGA notice. "Uribe's bare reference to section 2802 and its indemnification requirement was insufficient to preserve a PAGA claim as to cell phone usage because his notice stated no 'facts' whatsoever as to that 'theor[y]' of an alleged PAGA violation." *Id.* at 1005. The court acknowledged that

> Uribe in his PAGA notice did provide underlying "facts and theories" for his claim, at least insofar as claiming Crown violated the statute "by failing to reimburse Employee for Expenses incurred for *purchasing slip resistant shoes and maintaining his uniform*." (Italics added.) But notice regarding "shoes" and "uniform" cannot be stretched to include unreimbursed cell phone use. Uribe's PAGA notice is devoid of any facts or theories relative to that later claim.
>
> While the requisite facts and theories stated in a PAGA notice are "minimal," . . . the requirement is real. Absent adhering to section 2699.3, subdivision (a)(1)(A)'s mandate requiring notice of "facts and theories" underlying a PAGA claim, Uribe's notice could be expanded beyond recognition to include "claims for tools, cleaning supplies, automobile or mileage expenses, and more," as Garibay observes. By omitting reference to cell phone claims altogether, Uribe's notice "did not give" . . . "sufficient information for the LWDA to assess the seriousness of the alleged violations and decide whether to allocate scarce resources" to it. In omitting entirely any facts or theories as to cell phone use, Uribe's PAGA notice was deficient on that score; it was therefore inadequate to furnish grounds for Uribe to sue on that basis.

*Id. See generally Stoddart v. Express Servs.*, No. 2:12-cv-01054-KJM-CKD, 2015 U.S. Dist. LEXIS 124002, *16 (E.D. Cal. Sept. 15, 2015) (stating that "[s]etting forth a violation based on one theory does not satisfy the notice requirement as to a violation of even the same code section under a different theory"); *see also Bradescu v. Hillstone Rest. Group, Inc.*, No. SACV 13-1289-

GW(RZx), 2014 U.S. Dist. LEXIS 150978, at \*34 (C.D. Cal. Sept. 18, 2014) (noting that plaintiff's PAGA notice did "identify a free meals-based overtime theory, [but not] any facts supporting claims based on 'large party gratuities' or 'training bonuses'"); *cf. Mireles v. Paragon Sys.*, No.: 13-cv-00122-L-BGS, 2016 U.S. Dist. LEXIS 181284, at \*15 (S.D. Cal. Feb. 8, 2016) (stating that "it is not the LWDA's job to connect the dots and infer that, by saying carrying guns and radios obstructed *meal* periods, what Plaintiffs meant was that Defendant denied proper *rest* periods by requiring employees to stay on site and actively monitor the radios during the ten minute breaks") (emphasis in original).

C.    Dismissal with Prejudice

Based on the analysis above, the Court grants Defendants' motion for judgment on the pleadings. Mr. Miller failed to exhaust his administrative remedies because his TAC implicates conduct that was not the basis of his PAGA notice. The only issue remaining is whether this case should now be dismissed with prejudice.

The Court agrees with Defendants that a dismissal with prejudice is warranted. Mr. Miller has failed to show that amendment would not be futile. At the hearing, Mr. Miller suggested that a substitute plaintiff might be found but (1) there is no person ready to step in now and (2) Mr. Miller is already the substitute plaintiff for Mr. Jimenez. Also, contrary to what Mr. Miller asserted at the hearing, there are no factual disputes here that either preclude judgment on the pleadings or warrant an amendment. What is before the Court is tantamount to a pure legal question – *i.e.*, as a matter of law, does the conduct at issue in the TAC fall within the scope of the PAGA notice. It does not. The Court therefore dismisses this case with prejudice.[3]

/ / /

/ / /

/ / /

/ / /

---

[3] To be clear, the Court does not opine on whether Mr. Miller or another current/former employee could bring suit in a different action against Defendants based on the pre- and post-inspection reports and paperwork.

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.    CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for judgment on the pleadings and dismisses this case with prejudice.  The Clerk of the Court is instructed to enter a final judgment in accordance with this order and close the file in the case.

This order disposes of Docket No. 85.


**IT IS SO ORDERED**.


Dated: February 4, 2026

_____
EDWARD M. CHEN
United States District Judge

10